# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-2976
_____

United States of America

*Plaintiff - Appellee*

v.

Malachi Patton Handley

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids
_____

Submitted: September 16, 2025
Filed: August 11, 2026
_____

Before BENTON, GRASZ, and KOBES, Circuit Judges.
_____

GRASZ, Circuit Judge.

Law enforcement officers pulled Malachi Handley over after noticing his vehicle had a broken brake light. During the stop, law enforcement called a K–9 team to conduct an open-air drug sniff. While conducting the open-air sniff, the drug dog's snout entered the open window of Handley's vehicle for approximately one second before she sat down to indicate narcotics were present in the vehicle. Determining probable cause existed based on the drug dog's indication, law

enforcement then searched Handley's vehicle and found a firearm and marijuana. A grand jury indicted Handley for being a felon in possession of a firearm and for possessing a stolen firearm. Handley moved to suppress the evidence uncovered during the search, arguing his Fourth Amendment rights were violated when the drug dog's snout entered his vehicle during the sniff. The district court[1] denied the motion to suppress. Handley then pled guilty to the felon in possession count and reserved his right to appeal the denial of his suppression motion. He now appeals, and we affirm.

## I. Background

Law enforcement from the Cedar Rapids, Iowa, Police Department stopped Handley after observing a broken brake light on his vehicle. An officer approached the driver's door and told Handley why he stopped him. The officer smelled marijuana and asked Handley if he ever smoked in the vehicle. Handley denied he had.

After moving away from Handley's vehicle, the officer told two other officers on the scene that he smelled marijuana but could not detect whether the odor was coming from Handley's vehicle or a nearby apartment complex. The officers then called a K–9 team to conduct a drug sniff. Officer Tyler Smith arrived with a drug dog, Lara. Officer Smith positioned himself and Lara 15 to 20 feet west of Handley's vehicle. He placed Lara in a sit position and directed her to start an open-air drug sniff. After this command, Officer Smith observed several changes in Lara's behavior.

First, Lara began to breathe with her mouth closed before quickly pulling to the front grille of Handley's vehicle. "Officer Smith then noticed Lara snap her head back toward the driver's side of the vehicle." Officer Smith testified that based on

---

[1]The Honorable C.J. Williams, Chief Judge, United States District Court for the Northern District of Iowa.

his observations in other drug sniffs, the snapping was caused by her efforts to return to a "scent cone" she had left. When Lara reached the driver's side wheel well, Officer Smith noticed Lara exhibit "a very aggressive . . . closed-mouth sniffing pattern" that was inconsistent with her normal breathing pattern. Lara sniffed along the vertical door seam between the driver's side front and rear doors. Her head again snapped back upwards and to the left. Officer Smith described this snap as an effort by Lara "to find the strongest source odor." At this point, Lara jumped up, and her snout intruded four to six inches into Handley's vehicle through the open driver's window for approximately one second. After jumping, Lara immediately sat down beside Handley's driver side door to indicate she detected narcotics. The drug sniff, from the time that Officer Smith gave his command to when Lara sat down, lasted just a few seconds.

Officer Smith then authorized other officers to search Handley's vehicle based on Lara's indication. And when they did, they found a firearm and marijuana in the vehicle's center console.

A grand jury indicted Handley for possessing a firearm as a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8), and for possessing a stolen firearm in violation of §§ 922(j) and 924(a)(2). Handley then moved to suppress the evidence found during the search of his vehicle. The district court concluded Lara's intrusion was an unreasonable, warrantless search because the officers did not have probable cause before Lara sniffed inside Handley's vehicle. Even so, the district court denied Handley's motion to suppress and declined to apply the exclusionary rule because, in its view, the search was conducted "in objectively reasonable reliance on binding appellate precedent . . . ."

After the district court denied his motion, Handley conditionally pled guilty to possessing a firearm as a convicted felon, and the district court sentenced him to 46 months of imprisonment. As part of his plea agreement, he reserved his right to challenge the denial of his suppression motion. He now appeals this issue.

## II. Analysis

Handley argues the district court erred when it declined to apply the exclusionary rule. "We review a district court's denial of a motion to suppress *de novo*, but we review the district court's underlying factual determinations for clear error." *United States v. Demilia*, 771 F.3d 1051, 1054 (8th Cir. 2014). We address in turn (1) whether Lara's sniff amounted to a Fourth Amendment violation and (2) whether the district court erred by declining to apply the exclusionary rule.

### A. Fourth Amendment Violation

The Fourth Amendment protects citizens from unreasonable searches and seizures. U.S. Const. amend. IV. A search occurs when "[t]he [g]overnment physically occupie[s]" a vehicle "for the purpose of obtaining information." *United States v. Jones*, 565 U.S. 400, 404 (2012). Law enforcement is generally required "to obtain a warrant before conducting a search." *United States v. Preston*, 685 F.3d 685, 689 (8th Cir. 2012). In fact, "[w]arrantless searches are per se unreasonable unless an exception to the warrant requirement applies." *United States v. Vittetoe*, 86 F.4th 1200, 1202 (8th Cir. 2023). "The '"automobile exception" permits police to conduct a warrantless search of an automobile if, at the time of the search, they have probable cause to believe that the vehicle contains contraband or other evidence of a crime.'" *Id.* at 1203 (quoting *United States v. Kennedy*, 427 F.3d 1136, 1140–41 (8th Cir. 2005)).

Notably, a search generally does not occur when a drug dog sniffs the exterior of a vehicle. *Illinois v. Caballes*, 543 U.S. 405, 408–09 (2005). But when a drug dog enters the interior of a vehicle during its sniff, that is an entirely different issue. *See United States v. Pulido-Ayala*, 892 F.3d 315, 318 (8th Cir. 2018) ("Police ordinarily cannot search the interior of an automobile unless they have probable cause to believe that the vehicle contains contraband or other evidence of a crime."). "A drug dog is an instrumentality of the police, and the actions of 'an instrument or agent' of the government normally are governed by the Fourth Amendment." *Id.*

(quoting *Skinner v. Ry. Lab. Execs.' Ass'n*, 489 U.S. 602, 614 (1989)). "[A]n alert or an indication 'by a properly trained and reliable drug dog provides probable cause . . . for the search of a vehicle.'" *United States v. Thin Elk*, 148 F.4th 595, 600 (8th Cir. 2025) (quoting *United States v. Winters*, 600 F.3d 963, 967 (8th Cir. 2010)). When deciding whether a drug dog's alerts are sufficient to establish probable cause, we ask "whether all the facts surrounding a dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime." *Id.* (quoting *Florida v. Harris*, 568 U.S. 237, 248 (2013)).

We first address whether a Fourth Amendment search occurred here. Nearly 20 years ago, we held that "[a]bsent police misconduct, the instinctive actions of a trained canine do not violate the Fourth Amendment." *United States v. Lyons*, 486 F.3d 367, 373 (8th Cir. 2007). We determined that a dog's intrusion into the open window of a vehicle during a drug sniff, where law enforcement did not direct or encourage the behavior, did not violate the Fourth Amendment. *See id.* However, Handley argues that two intervening Supreme Court decisions — *United States v. Jones*, 565 U.S. 400 (2012) and *Florida v. Jardines*, 569 U.S. 1 (2013) — have since undermined our decision in *Lyons*.

In *Jones*, the Supreme Court held the Fourth Amendment applies when law enforcement "physically occupie[s]" a vehicle "for the purpose of obtaining information." 565 U.S. at 404–05. There, the Court determined a search occurred when the government attached a GPS device to the exterior of a vehicle. *Id.* at 403–04. And in *Jardines*, the Court concluded that a search occurred when law enforcement led a drug dog onto the curtilage of a person's home, where it alerted to the presence of narcotics. 569 U.S. at 4–6, 11–12. In reliance on this alert, law enforcement obtained a search warrant for the home and ultimately discovered marijuana. *Id.* at 4. The Court determined a search occurred and suppressed the evidence because law enforcement "learned what they learned only by *physically intruding* on Jardines' property to gather evidence . . . ." *Id.* at 11 (emphasis added).

The government argues Lara's actions do not fall within the scope of *Jones* or *Jardines*. Instead, they argue *Lyons* still controls because the officers did not prompt Lara to enter Handley's vehicle, meaning she acted instinctively and therefore did not violate Handley's Fourth Amendment rights. We disagree.

We decided *Lyons* before *Jones* and *Jardines*. And until now, we have not needed to resolve whether *Lyons* holds up in light of these intervening decisions. *See Pulido-Ayala*, 892 F.3d at 318–19 (reserving this question).

Taken together, *Jones* and *Jardines* make clear that when the government, including its dogs, trespasses onto private property for the purpose of gathering information, a search occurs. *See Jones*, 565 U.S. at 404–05; *Jardines*, 569 U.S. at 10–11 (rejecting Florida's argument that a drug dog's trespassory sniff was not a search under *Caballes*). The test is objective — all that matters is whether "the [g]overnment physically occupied private property for the purpose of obtaining information." *Jones*, 565 U.S. at 404. And this simply cannot be squared with *Lyons*'s holding that "[a]bsent police misconduct, the instinctive actions of a trained canine do not violate the Fourth Amendment." *Lyons*, 486 F.3d at 373.

Here, Handley did not authorize the government to enter his vehicle. Thus, a trespass occurred when Lara stuck her snout through the window of Handley's vehicle. *See Jones*, 565 U.S. at 404–05. This trespass occurred during a drug sniff, which was obviously aimed at gathering information regarding whether narcotics were present in Handley's vehicle. Because Lara, an instrumentality of the government, trespassed into Handley's vehicle to obtain information, her sniff amounted to a search. *See Pulido-Ayala*, 892 F.3d at 318 ("A drug dog is an instrumentality of the police . . . .").

The government argues that Lara's behavioral changes, or "alerts," prior to entering Handley's vehicle established probable cause for the search. This is admittedly a close issue, as our case law is clear that a dog's alerts, as opposed to its final indications, can be sufficient to establish probable cause. *See United States v.*

-6-

*Hollemon*, 743 F.3d 1152, 1156–58 (8th Cir. 2014). But because we agree with the district court's decision to not apply the exclusionary rule, we need not address the district court's conclusion, based on its underlying factual and credibility determinations, that Lara's behavioral changes did not establish probable cause for the search. *See, e.g.*, *United States v. Marion*, 238 F.3d 965, 968–69 (8th Cir. 2001) (assuming without deciding that a search warrant lacked probable cause and ultimately determining the district court did not err in declining to apply the exclusionary rule under the good faith exception).

## B. Exclusionary Rule

Assuming, without deciding, that Handley's Fourth Amendment rights were violated, we next address the district court's decision not to apply the exclusionary rule. Handley asks us to apply the exclusionary rule here for three reasons: (1) *Lyons*'s statement that "[a]bsent police misconduct, the instinctive actions of a trained canine do not violate the Fourth Amendment," 486 F.3d at 373, was dicta; (2) Supreme Court and Eighth Circuit caselaw has called *Lyons* into doubt, so an officer could not reasonably rely on it; and (3) even if law enforcement officers could reasonably rely on *Lyons*, they should not have done so here because they should have known Lara was likely to violate Handley's rights, given that she had previously entered vehicles during drug sniffs. We disagree.

Generally, when a Fourth Amendment search is unreasonable, the exclusionary rule precludes evidence found during the search from being admitted at trial. *Davis v. United States*, 564 U.S. 229, 231–32 (2011). However, the exclusionary rule "is a prudential doctrine created by [the Supreme] Court to compel respect for the" rights the Fourth Amendment protects. *Id.* at 236 (cleaned up). "[T]he exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." *Herring v. United States*, 555 U.S. 135, 144 (2009). "Police practices trigger the harsh sanction of exclusion only when they are deliberate enough to yield 'meaningfu[l]'

deterrence, and culpable enough to be 'worth the price paid by the justice system.'" *Davis*, 564 U.S. at 240 (alteration in original) (quoting *Herring*, 555 U.S. at 144).

The exclusionary rule does not apply "when the police conduct a search in objectively reasonable reliance on binding appellate precedent . . . ." *Id.* at 249–50. "[W]hen binding appellate precedent specifically *authorizes* a particular police practice, well-trained officers will and should use that tool to fulfill their crime-detection and public-safety responsibilities.'" *Id.* at 241. An officer may reasonably rely on "existing precedent until that precedent is authoritatively overruled . . . ." *United States v. Davis*, 760 F.3d 901, 905 (8th Cir. 2014) (quoting *United States v. Barraza-Maldonado*, 732 F.3d 865, 869 (8th Cir. 2013)).

First, *Lyons* held that "[a]bsent police misconduct, the instinctive actions of a trained canine do not violate the Fourth Amendment." 486 F.3d at 373. Handley argues this language is dicta because the court alternatively held the search was reasonable based on the inevitable discovery doctrine. *See id.* at 373–74. But when courts give two alternative reasons for their conclusions, "neither can be considered obiter dictum . . . ." *Sutton v. Addressograph-Multigraph Corp.*, 627 F.2d 115, 117 n.2 (8th Cir. 1980) (quoting *Kushner v. Winterthur Swiss Ins. Co.*, 620 F.2d 404, 408 n.4 (3d Cir. 1980)).

Second, neither *Jones* nor *Jardines* explicitly overruled *Lyons*. And a reasonable officer would not be expected to realize that either case implicitly overruled *Lyons*, as neither case involved a drug dog's instinctive actions. It is true that we questioned *Lyons*'s validity after *Jones* and *Jardines*. But before today, we declined to resolve the issue. *See Pulido-Ayala*, 892 F.3d at 319 (noting that "[t]here is reason to doubt . . . whether the district court's reading of the *Lyons* cases endures" but ultimately declining to decide the issue and resolving the case on other grounds). So we think the officers here could have reasonably relied on *Lyons* in determining Lara's unprompted entry into Handley's vehicle did not violate his Fourth Amendment rights. *See Davis*, 564 U.S. at 241 ("Evidence obtained during a search

-8-

conducted in reasonable reliance on binding precedent is not subject to the exclusionary rule.").

Third, Handley argues the exclusionary rule should apply because Lara had previously entered vehicles prior to indicating and her handler had not stopped or discouraged this behavior. True, the exclusionary rule aims to deter improper police conduct. *See Herring*, 555 U.S. at 144. But the district court made no findings that Officer Smith engaged in deliberate, reckless, or grossly negligent conduct during Lara's drug sniff. *See id.* To the contrary, it recognized, "Officer Smith has not trained Lara to go through open vehicle windows." And despite the fact Lara was trained and instructed to seek out narcotics, the district court did not clearly err in determining that "[b]ased on the testimony and video evidence . . . , it appears that this was an instinctive action." Based on *Lyons*, law enforcement officers had no reason to think Lara's past incidents or their failure to discourage her behavior were improper conduct. Consequently, the district court did not err when it decided not to apply the exclusionary rule.

Because the law enforcement officers here reasonably relied on *Lyons* when they searched Handley's vehicle, the district court did not err when it denied Handley's motion to suppress.

## III. Conclusion

We therefore affirm the denial of Handley's motion to suppress.

_____